next year are you in number 2009-70 57 Santos vs. DVA and first year for Mr. Carpenter Mr. Santos is here appealing a decision of the United States Court of Appeals for its construction of this court's decision in Roberson v. Principi. We believe that the lower court misconstrued that decision by limiting the evidence of cogent evidence of unemployability that was available in the VA medical record to have been required to have been present at the time of his August 1997 claim. The claim that was made could I understand the argument and the decision that was made by the Court of Appeals for Veterans funds as I understand the argument was made at that time that you said that an informal claim should be treated as a claim for purposes of 51 10 correct and that then there should be a determination as to whether he had the TDIU was ascertainable in the one year before the filing of that claim correct as I understand the government's concession and they can tell me whether this is correct or not they agree that an informal claim matured by at least the in the period January to March of 1998 so the question then would become whether you can go back one year before the date of that informal claim. To determine whether the TDIU was ascertainable in that one year period. Am I describing that correctly? And part of the error that was made below was the confusion between that claim which is now conceded which had its genesis if you will in January of 1998 and the claim that was made in August of 1997. Well the question of the August 1997 claim under that theory becomes irrelevant because if there was a claim in January of 1998 and 51 10 applies then the question is whether the condition was ascertainable in the one year period before that. And if I understand the Court of Appeals for Veterans Claims decision they are saying ascertainable means that the information to add to make the ascertainment has to be within the possession of the Veterans Administration and that you have argued that no no ascertainable means that if you conducted an investigation you could figure it out am I describing that correctly? Well maybe not an investigation but if you simply looked at the content of the evidence in this case the evidence of the discharge summary from that period of hospitalization January to March of 1998 specifically indicated that he had not been employed since 1996. I guess what I'm asking you is does this case involve a dispute between you and the government over the meaning of the word ascertainable in 51 10? To the extent that Roberson is able to provide that I believe it does. I don't understand that because I don't understand what Roberson has to do with that. Well Roberson provides the mechanism for consideration in that one year look back window. Can the evidence what Judge Ivers below said was since it wasn't of record in August of 1997 that because it wasn't of record then that you could not use that evidence to show unemployability in the one year look back window. I'm completely confused. I'm sorry. As I understand it under 51 10 there's a question of what an application is. I'm not sure whether the government says that has to be a formal application or whether an informal application is sufficient I'll ask them that. But let's assume for the moment that an informal application is sufficient under 51 10 then you look back to the one year period before then and find out whether it was quote ascertainable as to whether the TDIU condition existed. That's correct. And what is the August 1997 application have to do with that? It seems to me irrelevant. Well before the government's concession that was what the court below had said was the defect in being able to rely upon Roberson is that when he made his claim in August of 1997 he couldn't use the evidence that was later developed by his hospitalization that indicated that it was ascertainable that he had been unemployed in that one year look back window. Therefore whether it was the beginning date of January 1998 or the beginning date of August 1997 the court below prohibited Mr. Santos from relying upon that evidence because it didn't exist on the date of the claim. At least according to the court below. Now given the government. What's wrong with that? What's wrong with that? Well I mean the information didn't exist. You agree the information didn't exist until 1998 when he was discharged. That's correct but that evidence spoke to precisely what's at issue in 51 10 B2 the one year look back window. When was it ascertainable that this increase had occurred? When was it factually clear that he couldn't work? Well if that's the case when was we talking about April it became known in April right? Well the current effective date is April because they gave him 100 percent based upon his period of hospitalization. The current effective date is April 1998 that's correct. But during January to April there's no issue because. No because he got the hospitalization. Well I guess so it's kind of confusing me if that's your theory. Firstly one question is it seems like in different portions you've been arguing a look back to 98 August 97 and other portions you're only seeking a look back to December of 97. So am I wrong about that? Well it depends on how you read the evidence and there are those variables available in the record as to what the evidence does or doesn't indicate. The evidence that was available in the January to March discharge summary indicated that he hadn't worked since 1996. No specific date in 1996. So why wouldn't you be talking about a look back till at least August of 1997? I'm just wondering where August I'm sorry till April of 1997 if that's the theory in your case. You pick two potential dates August of 97 and December 97. I'm not sure where they come from. Well because it depends on where you're taking that date from. Are you taking the date from the date of the claim which as Judge Dyke suggests is or should be January of 1998 instead of April 1998. The current effective date that's been assigned by the agency is April of 1998. One year back from that date is different than one year back from either January 1998 or August 1997. But there's nothing that brings us to a look back date of December of 97 or even August of 97. How does that explain where December of 97 comes from? Well my recollection is from the record there was some specific evidence about his employment as of December of 1997. I'm sorry I don't remember that specific. No you're talking about the document I guess it's on A Well my appendix isn't really clear but there's this document here it's the June 2003 application. Oh that's correct your honor. The 411 the document of 411 of the joint appendix. That shows him employed between October and December of 97. And that was his 2003 application. Right that's what he specifically alleged at the time in which he made that application. So that's where that date comes from. Is that is that date correct because elsewhere in the record I think that the date is 1996. That's correct and the reason Oh which is it? I mean this is his contention. Right well and well but the evidence says that the evidence that the government got is from that period of hospitalization is he hadn't worked since 1996. It's non-specific as to which month in 1996. If you go back one year from the August 1997 claim for increase then it's August of 1996. What Judge Shull is telling you is that if you look at this document it says he last worked in December of 1997. And so if the question is when the TDIU is ascertainable it becomes ascertainable in December of 1997. He started getting TDIU in January. So what are we talking about here? Well there's a conflict in that evidence based upon the statement that was made in that document in his application that that was the date. We believe that that information is incorrect and the correct information was the information provided in that hospital discharge summary. And it's simply that which was December of 1996. Correct. No it would have been January of 1990. During his period of hospitalization from January of 1998 to March of 1998 he said he hadn't worked since 1996. You know what it might be, isn't it possible Mr. Carpenter that the statement in the discharge summary is a typo on the date? I mean that they just got it wrong because in the second paragraph it says Mr. Santos first married his spouse. Mr. Santos last worked as a construction inspector for two months in 1996. And then if you go to 411, which is the document I pointed out, it says building inspector and it shows him from 1097 to 1297. That would be two months. So maybe the person who typed up the discharge thing just by mistake got the wrong date in there. Well actually of course it's our assertion that it's just the reverse. That the notation in the application was wrong of December 1990. But isn't this Mr., I mean isn't this Mr., the document at 411, 412, isn't that Mr.? I'm sorry, 411 your honor, I don't have a 411. It's way down at the bottom of the. But that's from another, it's the number in the center which is the joint appendix, in the center of the page. Oh. Instead of the darker number in the corner. Oh I can't, where's the number in the center? 128 I think. Is it 128? No, 28. Oh I'm sorry, 28 and 29. Sorry, I apologize. No, no, I appreciate Judge Dykes pointing that out. But 28 and 29 are his own statement. He's saying I worked, so maybe isn't it possible that the person who did the discharge summary just by mistake these things happened, put in 96. Oh okay, I'm sorry. It, that would have been a period of employment, but under the rules a period of employment that doesn't earn substantial gainful activity, meaning that for the year he didn't make above the poverty level is not considered employment, it's considered marginal employment. As you'll note there, this employment was merely for the period of October 97 to December of 1997. I'm sorry, I apologize. I did not focus on that in the preparation for this argument. But in any event, neither the VA nor the Court of Appeals for Veterans Claims addressed this issue as to what the right date was, right? That's correct. Because Judge Ivers prohibited consideration of that under his application or his construction of this court's decision in Roberson. It's our position that Roberson is clear that it says whenever that evidence is created. I don't understand what Roberson has to do with this. I really don't. I thought your theory was that there was an application in January of 1998 because that's when the information reached the Veterans Administration about his TDIU and that under 5110 you can go back a year if it was ascertainable within that year that he had TDIU. Well, the determination ultimately turns on what the finding is of the date of the claim. And there are several options in this case. Well, let's assume that the date of the claim is January 1998. Do you win or lose? I believe we win because that information provided in that medical record is irrelevant cogent evidence of unemployability back to 1996, which falls within that one-year look back window. And at the very least, the VA has obligated and the board was obligated to have considered whether that was evident his lay statement that he didn't work. There isn't evidence in this record that contradicts that with the exception of that two-month period. And that two-month period does not qualify as substantial gainful activity under the VA's own regulation. And therefore, this evidence that he wasn't working and he was service-connected and met the requirements for a total rating back to at least April of 1997 when the VA granted him service connection for post-traumatic stress disorder, which they conceded in the was essentially the same psychiatric disability as he was originally service-connected for with schizophrenia. But you've never asked for August of 1997. That's what's so confusing to me if your theory is this one-year look back. Because the entire case here, it had two conflicting dates. One's December of 97 and one's August of 97. There's no April of 97 here. But until we got the government's brief in this case and based upon the court's decision below, the court's decision below was is that the April 1997 claim was not able to be used because that evidence from January of 1998 wasn't in the record in August of 1997. And that's what we were prohibited under the ruling below from being able to utilize the decision in Roberson for. And that makes the one-year look back window go back one year from August of 1997. But at the very least, it goes back to August of 1997. I didn't understand your picking August of 1997 in all of your briefing here. I didn't understand that that would be the trigger for the look back to August of 96. I understood it to be that you were arguing that he should get the payment between August of 97 and January 1998. Am I wrong about that? You weren't arguing for a look back in your briefs from August of 97 to August of 96, were you? Well, I'm looking for the correct application of 5110b2 for the look back from one year from the date of his claim. And by the basis of this ruling, the court made the date August of 1997 instead of January of 1998, as at least has now been implicitly conceded by the government based upon this informal claim from his VA medical record. Mr. Korman, the issue was that the board, or I'm sorry, the court said he didn't submit in 97. Correct. Evidence of unemployability. Evidence of unemployability. And the government said there wasn't such evidence at that time. And that didn't come in until later. Correct. And you say that, but Roberson says once it's submitted. And there's this dispute in the briefs about you use the word whenever, sometimes, and the government says no, but Roberson says once. I thought that was the issue in the case. Well, I think ultimately it is the issue in this case as to how the rule in Roberson interplays with the 5110B2 in establishing what that one year look back evidence window can take into consideration. In this case, we're talking about evidence that was created in a VA medical record that got created by the VA and by the VA's own regulations becomes an informal claim for increased compensation. And the board, in its decision that's on appeal here, or excuse me, was on appeal to the court below, conceded that that was an informal claim and assigned the effective date when that date of hospitalization ended. So the question then becomes, under the court's holding below, is Roberson applicable because that evidence didn't come in until it was generated after the fact of his claim in August of 1997? Why isn't the issue what ascertainable means? And if I understand what the government is saying, it wasn't ascertainable until the January 1998 hospitalization. And then we got the information about his unemployability. You are saying, if I understand correctly, that it was ascertainable at an earlier date because the January 1998 thing shows that he was unemployable at an earlier date than January. Correct. And that it was factually ascertainable within one year prior to that date. If that's the issue, I don't understand what Roberson has to do with it, but I keep saying that. Your position is ascertainable starting when? Well, to me, that's how Roberson plays into this, is that the starting when is it doesn't make any difference when the government or the VA gets this information. As in this case, when they get it in a VA medical record. They get it in August and April of 98. Well, between January and March of 1998. OK. And so you're saying, if you're going to rely on the statute when it would have been ascertainable, have you taken a position as to when it would have been ascertainable? Presumably you have. You relied on the date of August of 97. So is it your position that that was the date it was first ascertainable? Well, it is ascertainable based upon the evidence that he hadn't worked since 1996. And he was unable to work is the same kind of information that was provided in Roberson when he said he couldn't work. But Judge Prost is saying, if that's the case, why aren't you arguing for 1996? What's the basis for the August 1997 date? Nothing seems to have happened about his unemployability as of August 1997. That just happens to be a date in which he started the claims process. But that doesn't bear on whether his unemployability was ascertainable in August of 1997. That's the problem. And I'm sorry, that's my error for not making that clear. The VA regulations currently provide under 416B that you have to meet certain percentage requirements. That percentage requirement was met as of that date. If you stick just to those percentage requirements, then you can go back to that date and no further. That date being August of 97? August of 1997, the same date that he filed his claim for compensation for post-traumatic stress. You're saying that the problem was, your contention is to Roberson, to Carpenter, is that as of that date, even though nothing was submitted about unemployability, he's entitled to have what was submitted thereafter read back as if it had been submitted. That's correct. That's where you say the Roberson crunch comes in. That's right. And if you look at the second sentence of 5110B2, it talks about the information having been received within one year of the application. And if the application date is, in fact, August of 1997, then we're looking at the applicability of that one year look back window under the utilization of the Roberson theory that it doesn't make any difference when you get the evidence along the continuum. Because once the VA got it- Can you show me anything in your briefs that suggests that what you're seeking here is a look back from August of 97? I'm not seeking that from this court, Your Honor, and that's why it's not in there. I've tried to limit what's in there to what the decision was below. The decision was below that this evidence could not be utilized because it wasn't submitted in August of 1997. That was the error. Look back before August of 1997. As I understood what you just said- I'm sorry, Your Honor? You're not seeking a look back from August of 1997 to an earlier period. You're saying that's the date when it should start and you're saying that's the date that it should start because that was the date at which he had the required scheduler rating. Is that correct? Based upon the law as it currently exists, that's correct. If I succeed in a remand and we go back, then I will be arguing for an effective date because we now have agreement that this claim vis-a-vis the medical records was received during the time that his 1997 claim for increase was pending and developed. Therefore, that evidence had to be considered from the August 1997 date. If that's the date of the claim for increase, then that's the trigger date under 5110b2 to go back one year. My problem there is he doesn't meet the scheduler requirements for a total rating based upon unemployability under the regulation that it's currently been awarded under. You would have to present another theory, which obviously is not capable of being done before this court. All right. Thank you, Mr. Kerman. Mr. Austin? Thank you, Ronald. May it please the court. Let's first ask you, within the meaning of 5110, is an informal application an application within the meaning of 5110? Yes. Okay, all right. Yes, it is. I think an argument could be made otherwise, but we're not contending that here. Okay, so you agree that an informal application was made as of January 1998? That's correct. Not just do we agree with it, but the board said that in its decision as far back as 2006. Okay, so under 5110, he's entitled to a look-back for one year if the TDIU condition was ascertainable during that one year, right? Factually ascertainable, that's correct. Do you and Mr. Carpenter disagree about what factually ascertainable means? I don't think that's the real issue, Your Honor. You're very close to the real issue, but the real issue here is the fact that the board made a factual finding in its 2006 decision that the earliest date that the unemployability was factually ascertainable was January of 1998. That may be based on a misconstruction of the statute potentially. It seems to me that the board has said in past decisions and in this one that ascertainable means that you have to have made a showing to the VA as opposed to that's the fact. In other words, that if somebody went out and investigated it and inquired into it, you'd find that he had TDIU. That seems to be a difference in statutory construction. One side saying, well, if you knew the facts, it would be TDIU would exist. Whereas the board and the Veterans Court are saying, oh, no, no. It's not enough that you could figure it out. You actually have to have submitted that evidence to the VA. Well, there definitely could be different theories as to how you make the factual determination as to when it's factually ascertainable as to its unemployability. In this case, there's no evidence whatsoever that the board didn't look at the entire record and determine based on all the evidence in the record that the first date it was factually ascertainable was precisely at the time that that evidence appeared in the record, which was January of 1998. Judge Shaw made the comment that perhaps it was a typo that appeared in the discharge summary of January 1998, where the date of 1996 is even mentioned. I believe that's absolutely what happened. First of all, in the hospital discharge summary, it mentions that he last worked for two months in 1996. Well, if we look at JA-28, which your honors have already looked at, which is the application that he filed in February of 2003, he states not once, not twice, but on three occasions that he last worked for two months in December of 1997. State the date that you last worked full time, December 1997. Date that you became too disabled to work, December 1997. He lists in the chart there he was a building inspector from 1097 to 1297 for two months. And he also listed at the bottom there, not only that, but elsewhere in the record here on at page 75, JA-75 of the record, is a filing after Mr. Santos was represented by very capable counsel. What did counsel argue as to what the date should be for when he last worked? He writes, and I quote, had the VA solicited a TDIU application in 1998, the VA- This is at 75? This is at 75, your honor, and it's at the last sentence of the first full paragraph, starting on the word had. Had the VA solicited a TDIU application in 1998, the VA would have been informed by that that Mr. Santos had been unable to work since December of 1997. So there, Mr. Santos is arguing, I last worked in December of 1997. There's a comment on the preceding page of the same pleading filed with the VA, in which he also argues, I last worked full time in December 1997. And that's on- You may be right about that, but the problem is we're not supposed to make factual determinants. And that is the point, your honor. The board made the factual finding for you, as it was supposed to. It made the factual finding that the date at which it was first factually ascertainable was January 1998. They contended before- Mr. Santos contended before the Veterans Court that that date was clearly erroneous. Let me give you a hypothetical. Suppose what we had was a decision by the Veterans Court that said, we've got to determine the meaning of the word ascertainable. We construe it as meaning that it's ascertainable when the VA can ascertain it from the records that are before the VA, that in this case, that was not until January 1998. Therefore, the look back period can't go back before January of 1998. And they said that that's true, even though, in fact, he was unemployable in, let's say, August of 1997. OK? Would that be a correct interpretation of the law, or would that not be a correct interpretation of the law? Understanding that's a hypothetical situation, because I don't think that's what occurred here. I don't think, and I looked into that question carefully in preparing for this argument, I don't think there's any case which clearly addresses that. Right. I believe an argument could clearly be made that it's the first interpretation that your Have to be objective records in the possession of the Veterans Administration. Right. And that do not look retroactively, unless there are other documents that existed back earlier, which would indicate that had they had those records in their possession, it was factually ascertainable. And I base that, Your Honor, if you look at the language of 38 U.S.C. 5110b2, and the regulation that goes with that, which is 38 C.F.R. 3.402, they both have this language, and the statute is ascertainable, and the regulation is factually ascertainable. And those words would really be superfluous if you interpreted it the latter way in your hypothetical. Because otherwise it would just say, the first day when the disability appeared. And here it says, no, it's the first day that it was ascertainable that the disability appeared. And ascertainable could be synonyms for each other. You're right. You look at the dictionary, and ascertainable could be determined as a result of investigation. That's absolutely correct, Your Honor. But these are extra words that if you look at the language, which are inserted for some reason. And if they weren't there, it would certainly come up with the second interpretation in your hypothetical. So our argument would be, which I think is correct, that that does mean that the correct interpretation is what is in the possession that could be factually ascertainable of the government. But we don't have to reach that here. You think that's not the interpretation that the Veterans Court adopted? I think what the Veterans Court did here is they simply looked at all the evidence that was in the record, which was dominated by the fact that Mr. Santos submitted in his claim that he last worked in December of 2007, that they argued. 1997. I'm sorry, in December of 1997, that they argued that was the date he last worked. They also, there's another piece of evidence in the hospital discharge summary, which also says that he was prompted to go to the hospitalization that he had in January 1998 by a friend who recently put two and two together and said, I think you're not working, and you're not able to work. And suggesting in there that that had occurred just prior to the time he was admitted to the hospital. And that's on JA-17, the hospital admission. It talks about how he received a fellow veteran who began noticing that Mr. Santos was losing touch and unable to work. Suggesting that occurred just prior to the time that he went to the hospitalization. I think what the Veterans Court did in properly applying Section 5110b-2 is look at all that evidence and make the factual determination that it first became ascertainable that he was unemployable in January of 1998. Remember, under Section 5110a and 38 CFR 3.400, it's the later of those two dates that you determine the effective date. It's later the date that he filed his formal claim or his informal claim and the date that it first became that his claim accrued, which would be when it became factually ascertainable. In this case, what the board and the Veterans Court did is say the date that the informal claim was filed was January of 1998. And I agree with counsel that January 1998 or April 1998 are the same thing because of the period of temporary total disability. I understood the issue in the case to be whether... I understood what happened here is the Court of Appeals for Veterans Claims said, OK, you didn't do enough in August of 1997 to trigger application of Roberson, right? Yes. OK. And I understood the appeal came up here on the briefs that, no, we did do enough in August. There was enough of August of 1997. And you bring in what happened later and read it back to August of 1997, right? I agree that's what the claim is from Mr. Santos. OK. The argument... Maybe I've been missing something. The argument seems to go on a field for that with lookbacks and all of this. It has gone afield, Your Honor, and that's because the argument misses the boat. The boat is that the board made this factual finding that January of 1998 is when it became factually ascertainable. They can't appeal that to this court because, as Your Honors are well aware, this court lacks jurisdiction to entertain a factual question. So to get around that, the argument is being made that this has somehow something to do with Roberson. It really doesn't. It really doesn't because... And the other point I'd like to make, Your Honors, is to the extent that Roberson has anything to do with this case, and that is that the claim is supposed to be read sympathetically to the veteran. The board and the veterans court followed that rule to the letter in this case. In February of 2003, for the first time, a formal claim was filed for TDIU. Under the statute, under 5110A, that's the presumptive effective date unless an exception applies. As Your Honor points out, there's an exception in 38 U.S.C. 5110B2 that would allow you to look back, if the facts are present, up to one year. That would have brought the earliest possible effective date to February of 2002. The board didn't do that. The board picked an effective date that was four years earlier than February 2002, dating it back to 1998. It did that by applying 38 CFR 3.157A, which says that a hospital discharge summary can constitute an informal claim, and applying Roberson. And putting those two together, the board construed that as an informal claim as of 1998. It didn't stop there. It then said, we can still go back a year, because even though this is an informal claim, we're going to apply 5110B2. And we're going to say, maybe we can go back a year if this informal claim of January 1998 became factually ascertainable a year earlier, assuming it wasn't more than a year earlier, because the regulation and the statute wouldn't allow that. They did that analysis. They mentioned the 1996 date right in the board decision. They didn't overlook it. They knew it was there. They made the factual determination that the unemployability became factually ascertainable for the first time in January of 1998. Therefore, you have two dates, the date of the informal claim, January 1998, or April of 1998. The date that first became factually ascertainable, same date. Which of those two, you end up with that date for the informal claim. And that became the effective date. With respect to the claim that you can somehow use Roberson to date this back to August 1997, that's simply incorrect. That gets into the whenever, once dispute. It does. But Roberson is very clear that you can't take any claim for increased compensation. In this case, the board made the conclusion. You've got to have evidence of unemployability. That's right. And that evidence of unemployability first appeared in January 1998. And the board of the Veterans Court said, under Roberson, under 3.157a, that's when the informal claim occurred. So you have a formal claim for PTSD in August of 1997. You have an informal claim for TDIU that occurred in January of 1998. But as I think your honor has hit upon, it really doesn't matter in this case. Because whether or not the informal claim is considered to be August 1997, when the 1998, when the informal claim came in, doesn't matter. Because the other element is, when did it become factually ascertainable that he was unemployable? And that date was January 1998. So under either scenario, with respect to when the informal claim was filed, because of the 5110 and because of 3.400, it's the later date that would be the effective date. And the board and the Veterans Court got it right on the button here. It's April 1998, because he already had the three-month window of total disability between January of 88 and March of 88. And for these reasons, we would first contend that the court lacks jurisdiction. Because the real issue here is this factual finding as to the factual ascertainable date, which the court lacks jurisdiction. But in the alternative, the board, this court, should affirm the decision of the Veterans Court that the correct effective date is April of 1998. Unless the board has any other questions, that's all I have. Thank you, Mr. Harkin. Thanks very much. We'll give you two minutes. OK. Quickly, then, if I direct the court's attention, please, to Joint Appendix, page three, following on to page four. That's the portion of the court's decision below that discusses the interpretation rejected by the court below regarding factually ascertainable and requiring that the evidence have been present in the record, which then relates back to the question of Roberson. Now, I'd like to comment on the veteran's application for unemployability, which was not filed until 2003. And the references made there by the government at pages 28 and 29 of the Joint Appendix, the government overlooked box number 12, which indicates the date the disability affected full-time employment was April of 1988. And under the VA's own regulations, if you cannot follow substantial gainful occupation, meaning you can't earn above the poverty level, then you are entitled to unemployability benefits if your inability to work results from your service-connected disability. As concerns the reference to my communication with the VA, that was in a substantive appeal that dealt with the effective date that got the matter from the regional office to the board for ultimately the 2006 decision. At that time, the effective date was 1999, October of 1999, and the board agreed in its decision to take it back to effectively January of 1998. I wanted to clarify those specific parts of the record and indicate how those do apply. And I do not believe that the reference in the VA medical record was a typographical error. But the point is the ability under Roberson to be able to utilize that evidence for the one-year look-back window. And this may, in fact, Your Honor, require an interpretation of what the meaning of does mean. But it seems to me that the decision below was limited to the fact that because he had made his claim in 1997 for post-traumatic stress disorder, he couldn't rely upon the evidence that came in vis-a-vis VA medical records in January to March of 1998. And that violates the whole thing in Roberson.